*05-1929*
*PLF*

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Powell Green                           11001

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**   11001
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Stewart & Henry PLLC
1050 Connecticut Avenue, NW, 10th Floor
Washington, DC 20036

## DEFENDANTS

Wachovia Bank, N.A. and Betty Green    11008

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT        n/a
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

ATTO

Gr
Tr
16
Mc

CASE NUMBER: 1:06CV01929

JUDGE: Paul L. Friedman

DECK TYPE: General Civil

DATE STAMP: 11/13/2006

*JURY ACTION*

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ◉ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSE
FOR PLAINTIFF A                    BOX
                                   NLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust

- ☐ 410 Antitrust

### ○ B. Personal Injury/ Malpractice

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review

- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ◉ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☒ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities- Employment ☐ 446 Americans w/Disabilities- Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding  ◉ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Complaint - UCC Sections 28:3-403, 3-406; 4-401 et seq; breach of contract, negligence, negligence per se violation of DC Consumer Protection Act

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  DEMAND $ 287,769.35+  Check YES only if demanded in complaint  **JURY DEMAND:** YES ✓  NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☐  If yes, please complete related case form.

DATE *Nov 13, 2006*  SIGNATURE OF ATTORNEY OF RECORD *Brad C. Frank*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

IN THE SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA

POWELL GREEN                              )
3005 Bladensburg Rd., NE Apt. 322         )
Washington, DC 20018                      )
                                          )
              Plaintiff                   )        0007523-06
                                          )
       v.                                 )    Case No. _____
                                          )
WACHOVIA BANK, N.A.                       )
SERVE: Any Officer                        )
Fort Lincoln Branch                       )
2119 Bladensburg Rd., NE                  )
Washington, DC 20018                      )
                                          )
and                                       )
                                          )
BETTY GREEN                               )
3298 Fort Lincoln Drive, NE # 908         )
Washington, D.C. 20018                    )
                                          )
              Defendants.                 )

RECEIVED
Civil Clerk's Office
OCT. 0 6 2006
Superior Court of the
District of Columbia
Washington, D.C.

COMPLAINT

COMES NOW the Plaintiff, Powell Green, by counsel, Stewart & Henry, PLLC and

AARP Legal Counsel for the Elderly, and files his Complaint in this matter stating as follows:

PARTIES

1.     Plaintiff Powell Green ("Powell Green") was and is an adult individual residing in

the District of Columbia.

2.     Upon information and belief, Defendant Wachovia Bank, N.A. ("Wachovia") was

and is a banking corporation organized pursuant to the laws of the United States of America.

Wachovia has branch offices located in the District of Columbia.

3.     Upon information and belief, defendant Betty Green was and is an adult and

individual residing at 3298 Fort Lincoln Drive #908, Washington, D.C. 20018.

1

## JURISDICTION

4.    This Court has jurisdiction of this action pursuant to D.C. Code Ann. § 11-921.

## BACKGROUND

5.    In approximately October, 2003, Powell Green sold his residence located on Capitol Hill in the District of Columbia. At the settlement on such sale, Mr. Powell received a check payable to him individually, for net proceeds in the amount of approximately $300,000.00 ("the Proceeds").

6.    As of October, 2003 Powell Green was 82 years old. He is a veteran of World War II. At all times relevant to this action he had significant visual impairment, and suffered from diabetes and other disabilities.

7.    Upon information and belief, on or about October 10, 2003, Powell Green established Crown Classic Banking checking account number xxxxxxxxx1587 ("Checking Account").

8.    Upon information and belief, on or about November 6, 2003, Powell Green, accompanied by Defendants John Green and Betty Green, visited in person the Fort Lincoln branch of Wachovia Bank in the District of Columbia for the purpose of depositing the Proceeds. Powell Green advised Wachovia employee Ms. Thomas, and/or other Wachovia employees, that he intended to save and invest the Proceeds for his grandchildren. With the knowledge and upon the recommendation of Wachovia employees, he established High Performance Money Market Account No. xxxxxxxxx9460 ("Money Market Account") for this purpose.

9.    All funds used to establish the Checking Account and the Money Market Account (together, "the Accounts") were owned by Powell Green individually and in his sole name.

2

10.    With the knowledge of Wachovia employees, the Accounts were titled jointly in the names of Powell Green and his brother, John Green. Powell Green and John Green provided Wachovia with signature cards for the Accounts. With the knowledge and upon the advice of Wachovia employees, the statements at all times relevant to this action were delivered to the home of John Green.

11.    It was the understanding and agreement of John Green that all assets in the Accounts were the sole property of Powell Green.

12.    Defendant Betty Green is John Green's wife, and Plaintiff Powell Green's sister-in-law.

13.    At the time the Accounts were established, Wachovia employees personally witnessed and were otherwise made aware of Powell Green's advanced age, visual impairment and other disabilities.

14.    On or about November 6, 2003, the date the Money Market Account was established, $287,841.17 of the Proceeds was deposited into the Money Market Account, and $2,000.00 of the Proceeds was deposited into the Checking Account.

15.    In addition to the aforesaid Proceeds, Powell Green's Veterans Administration Benefits checks and Social Security Benefits checks (totaling approximately $757.00 per month), were regularly automatically deposited to the Checking Account at all times relevant to this action.

16.    Except for the Proceeds, the Veterans Administration Benefits and the Social Security Benefits, all of which were owned by Powell Green individually, no other significant principal deposits were made into the Accounts at any time relevant to this action.

3

17.    Commencing on or about November 12, 2003, and continuing through and including about December 19, 2003, approximately six (6) checks numbered 093 through 100, and totaling $25,200 were drawn on the Money Market Account, payable to Betty Green and purportedly signed by Powell Green as drawer (the "Money Market Checks"). None of these checks were authorized or ratified by Powell Green, or upon information and belief by John Green, and constitute forgeries and were fraudulent.

18.    On or about November 13, 2003, December 1, 2003, and December 19, 2003, withdrawals totaling $7,500 were made from the Money Market Account upon the purported signature of Powell Green (the "Money Market Withdrawals"). None of these withdrawals were authorized by Powell Green, nor upon information and belief by John Green, and constitute forgeries and were fraudulent.

19.    On or about December 26, 2003, and continuing until the funds in the Money Market Account were depleted in October, 2004, approximately fifty-two (52) large transfers (most in the range of $3,000 to $8,000) totaling approximately $255,800.00 were made from the Money Market Account to the Checking Account (the "Money Market Transfers"). Most or all of these transactions are reflected as "Bank Assisted Transfers" on the Money Market Account statement and were accompanied by a $3.00 bank fee each. None of these transfers were authorized or ratified by Powell Green, upon information and belief none of these transfers were authorized or ratified by John Green, and upon information and belief all were improperly and fraudulently ordered by defendant Betty Green without authority to do so.

20.    On or about October 19, 2003 and continuing through at least September 18, 2004, approximately eighty-four (84) checks totaling $122,217.40 were drawn on the Checking Account and purportedly signed by John Green as maker (the "John Green Checks"). The

majority of these checks were made payable to Betty Green. These checks were not signed, authorized or ratified by Powell Green, nor upon information and belief by John Green. Upon information and belief, the maker signature on each of these checks constituted a forgery by defendant Betty Green.

21.    On or about December 19, 2003 and continuing through at least May 28, 2004, approximately eleven (11) checks made payable to Betty Green totaling $11,840.00 and purportedly signed by Powell Green as maker, were drawn on the Checking Account (the "Powell Green Checks"). These checks were not authorized or ratified by Powell Green, or upon information and belief by John Green, and his signature was either forged, or obtained under false pretenses, due to his visual impairment.

22.    In approximately March, 2004, an "ATM" card was issued by Wachovia allowing the holder to make cash withdrawals from the Checking Account ("the ATM Card"). Powell Green did not request, authorize the request for, ratify, accept or have any knowledge of the existence of the ATM Card, nor upon information and belief did John Green request, authorize the request for, ratify, accept or have any knowledge of the existence of the ATM Card.

23.    Upon information and belief, the ATM Card was requested by and improperly issued by Wachovia to Betty Green, who was not a signatory on the Accounts and was not entitled to request or accept the ATM Card.

24.    Commencing on or about March 22, 2003 and continuing through at least October, 2004, approximately 417 ATM transactions occurred resulting in withdrawals from the Checking Account in an amount of not less than $120,173.95 ("ATM Withdrawals"). None the ATM Withdrawals were authorized or ratified by Powell Green, nor upon information and belief by John Green, and were all improper, unauthorized and fraudulent.

5

25.     At no time did Wachovia contact Powell Green to notify him of suspicious activity on the Accounts or relating to the ATM Card.

26.     On or about October 22, 2004 Powell Green became aware that the Checking Account was overdrawn.  On October 22, 2004, Powell Green, accompanied by Richard Treanor, Esq., visited the Fort Lincoln Branch of Wachovia to inquire about the overdrawn Checking Account.  On this visit to the Wachovia branch Powell Green first became aware of the forgery, fraud and theft on his Accounts, which forgery, fraud and theft was reported at that time to Wachovia.

27.     Powell Green promptly notified the District of Columbia police of the aforesaid forgery, fraud and theft on his Accounts and a police investigation ensued.

28.     On or about March 17, 2005, in the case of *United States v Betty Green*, I-516-05 (D.C. Superior Court), Betty Green admitted guilt in connection with the aforesaid fraud upon Powell Green, and entered a plea of guilty to one count of First Degree Fraud of a Senior Citizen in violation of 22 D.C. Code  §§ 3221(a), 3222(a), and 3601 (2001 Edition) and one count of First Degree Identity Theft, in violation of 22 D.C. Code, Section 3227.01, 3227.02, 3227.03(a) (2001 ed.).

29.     Wachovia has failed and refused to recredit or refund Powell Green for the amounts fraudulently obtained and improperly debited from his Accounts despite demand therefor.

**COUNT I**
**UCC § 28:3-403, 3-406 – Wachovia Bank, N.A.**

30.    Plaintiff hereby incorporates paragraphs 1 through 29 above as if fully set forth herein.

31.    The signatures on the Money Market Checks, the John Green Checks, the Powell Green Checks (collectively, the "Unauthorized Checks") and the Money Market Withdrawals, were all unauthorized, and the Unauthorized Checks and Money Market Withdrawals constituted forged instruments.

32.    Wachovia improperly debited the Accounts for the forged Unauthorized Checks and Money Market Withdrawals.

33.    Wachovia failed to exercise ordinary care and reasonable commercial standards in accepting and paying the Unauthorized Checks and Money Market Withdrawals and/or in not identifying the forged signatures and/or in debiting the relevant Accounts for the Unauthorized Checks and Money Market Withdrawals.

34.    Wachovia knew or should have known that the Unauthorized Checks and Money Market Withdrawals were unauthorized and were forged instruments.

35.    Wachovia did not act in good faith when it accepted the Unauthorized Checks and Money Market Withdrawals for payment, and/or when it debited the Accounts therefor.

36.    Wachovia's acceptance of the Unauthorized Checks and Money Market Withdrawals and debiting the Accounts therefor, and its failure to notify Powell Green of the egregious pattern of withdrawals as evidenced by the Unauthorized Checks and Money Market Withdrawals, was done in bad faith, willfully, wantonly and in conscious disregard of the rights of Powell Green, and/or with reckless indifference to the consequences, although Wachovia was aware that its conduct probably would damage others, including Powell Green.

7

WHEREFORE, Plaintiff Powell Green, respectfully prays that this Court enter judgment against Defendant Wachovia Bank, N.A. in the amount of $166,757.40 with respect to the Unauthorized Checks and Money Market Withdrawals, or such other amount as may be shown by the evidence, plus prejudgment and postjudgment interest, plus punitive or exemplary damages in the amount of $1,000,000.00, plus costs, less any amounts paid by Defendant Betty Green in restitution to Plaintiff, and such other and further relief as this Court deems just.

### COUNT II
### U.C.C. § 4-401 et seq. – Wachovia Bank, N.A.

37.     Plaintiff hereby incorporates paragraphs 1 through 36 above as if fully set forth herein.

38.     None of the charges to the Accounts by Wachovia resulting from the Unauthorized Checks, the Money Market Withdrawals, the Money Market Transfers, or the ATM Withdrawals, or any service fees relating thereto, were properly payable from the Accounts, and Wachovia was not entitled to charge the Accounts therefor.

39.     Wachovia knew or should have known that none of the charges to the Accounts resulting from the Unauthorized Checks, the Money Market Withdrawals, the Money Market Transfers, or the ATM Withdrawals, or any service fees relating thereto, were properly payable from the Accounts, and that it was not entitled to charge the Accounts therefor.

40.     Wachovia knew or should have known that Betty Green was not authorized to request or accept the ATM Card, or to make withdrawals from the Checking Account with the ATM Card.

41.     By accepting, executing upon and paying the Unauthorized Checks, the Money Market Withdrawals, the Money Market Transfers, and the ATM Withdrawals Wachovia failed

to exercise ordinary care and reasonable commercial standards, which failure substantially contributed to Powell Green's loss.

42.    Wachovia did not act in good faith when it accepted, executed upon and paid the Unauthorized Checks, the Money Market Withdrawals, the Money Market Transfers, and the ATM Withdrawals, and when it refused to recredit or refund the aforesaid improper charges to the Accounts to the owner of the funds, Powell Green.

43.    Wachovia's acceptance, execution upon and payment of the Unauthorized Checks, the Money Market Withdrawals, the Money Market Transfers, and the ATM Withdrawals, and its refusal to recredit or refund the aforesaid improper charges to the Accounts to the owner of the funds, Powell Green, was done in bad faith, willfully, wantonly and in conscious disregard of the rights of Powell Green, and/or with reckless indifference to the consequences, although Wachovia was aware that its conduct probably would damage others, including Powell Green.

WHEREFORE, Plaintiff Powell Green, respectfully prays that this Court enter judgment against Defendant Wachovia Bank, N.A. in the amount of $287,769.35 with respect to the Unauthorized Checks, the Money Market Withdrawals, the Money Market Transfers and the ATM Withdrawals, and fees and services charges assessed by Wachovia, or such other amount as may be shown by the evidence, plus prejudgment and postjudgment interest, plus punitive or exemplary damages in the amount of $1,000,000.00, plus costs, less any amounts paid by Defendant Betty Green in restitution to Plaintiff, and such other and further relief as this Court deems just.

**COUNT III**
**Breach of Contract – Wachovia Bank, N.A.**

44.     Plaintiff hereby incorporates paragraphs 1 through 43 above as if fully set forth herein.

45.     With respect to both the Checking Account and Money Market Account, by express and/or implied agreement, Powell Green and Wachovia contracted that Wachovia would hold the deposited monies for the account of Powell Green, and would pay out the monies only upon the proper order of the authorized signatories to the Accounts.

46.     In violation of its contract with Powell Green, Wachovia's acceptance of the Unauthorized Checks and Money Market Withdrawals and debiting of the Accounts, its issuance of the ATM Card, its debiting the Checking Account for the ATM Withdrawals, its transfer of funds pursuant to the Money Market Transfers and debiting of the Money Market Account, and other actions taken with respect to the Accounts as more fully set forth above, constituted a breach of the agreement(s) governing the Accounts.

47.     Powell Green has been damaged by Wachovia's breach.

48.     Wachovia's aforesaid breach of contract was done in bad faith, willfully, wantonly and in conscious disregard of the rights of Powell Green, and/or with reckless indifference to the consequences, although Wachovia was aware that its conduct probably would damage others, including Powell Green.

WHEREFORE, Plaintiff Powell Green, respectfully prays that this Court enter judgment against Defendant Wachovia Bank, N.A. in the amount of $287,769.35, plus prejudgment and postjudgment interest, plus punitive or exemplary damages in the amount of $1,000,000.00, plus costs, less any amounts paid by Defendant Betty Green in restitution to Plaintiff, and such other and further relief as this Court deems just.

**COUNT IV**
**Negligence – Wachovia Bank, N.A.**

49.    Plaintiff hereby incorporates paragraphs 1 through 48 above as if fully set forth herein.

50.    Wachovia Bank owed a duty to its depositor, Powell Green, to exercise reasonable care in the handling of his funds and Accounts, to comply with reasonable commercial standards in the handling of his funds and Accounts, and to comply with its contractual obligations to him.

51.    Wachovia Bank owed a duty to its depositor, Powell Green, to notify him of suspicious activity with respect to his Accounts, including but not limited to an obligation to notify him of the forgeries, the pattern of large transfers from his Money Market Account, the pattern of large checks drawn upon his Checking Account, the pattern of Betty Green depositing and/or cashing numerous large checks drawn on his Accounts, and a pattern of excessive withdrawals from his Checking Account via the ATM Card.

52.    Wachovia's acceptance of the Unauthorized Checks and Money Market Withdrawals and debiting of the Accounts therefor, its issuance of the ATM Card to an unauthorized person, its transfer of funds pursuant to the Money Market Transfers and debiting of the Money Market Account, its debiting of the Checking Account for the ATM Withdrawals, and other actions taken with respect to the Accounts as more fully set forth above, constituted a breach of its duty of care to Powell Green.

53.    Powell Green has been damaged by Wachovia's breach.

54.    Wachovia's aforesaid breach of duty was done in bad faith, willfully, wantonly and in conscious disregard of the rights of Powell Green, and/or with reckless indifference to the consequences, although Wachovia was aware that its conduct probably would damage others, including Powell Green.

WHEREFORE, Plaintiff Powell Green, respectfully prays that this Court enter judgment against Defendant Wachovia Bank, N.A. in the amount of his actual damages of $287,769.35, or such other amount as may be shown by the evidence, plus prejudgment and postjudgment interest, plus punitive or exemplary damages in the amount of $1,000,000.00, plus costs, less any amounts paid by Defendant Betty Green in restitution to Plaintiff, and such other and further relief as this Court deems just.

### COUNT V
### Negligence *Per Se* – Wachovia Bank, N.A.

55.    Plaintiff hereby incorporates paragraphs 1 through 54 above as if fully set forth herein.

56.    Wachovia owed a duty under the Electronic Funds Transfer Act, 15 U.S.C.§ 1693 *et seq.*, to make only proper debits from the Accounts for the use of an ATM card, and to immediately refund or recredit all amounts to Powell Green that were debited from his Checking Account as a result of unauthorized electronic funds transfers initiated by an unauthorized user of an unaccepted ATM Card, upon notice of such improper debits.

57.    By debiting the Accounts for the ATM Withdrawals, and failing to refund or recredit these amounts to Powell Green, Wachovia breached its duty under the Electronic Funds Transfer Act.

58.    Powell Green was damaged by Wachovia's failure to comply with its duty under the Electronic Funds Transfer Act.

59.    Wachovia's failure to comply with its duties under the Electronic Funds Transfer Act constitutes negligence *per se.*

60.    Wachovia's failure to comply with its duties under the Electronic Funds Transfer Act was done in bad faith, willfully, wantonly and in conscious disregard of the rights of Powell

Green, and/or with reckless indifference to the consequences, although Wachovia was aware that its conduct probably would damage others, including Powell Green.

WHEREFORE, Plaintiff Powell Green, respectfully prays that this Court enter judgment against Defendant Wachovia Bank, N.A. in the amount of $120,173.95, or such other amount as may be shown by the evidence, plus prejudgment and postjudgment interest, plus punitive or exemplary damages in the amount of $1,000,000.00, plus costs, less any amounts paid by Defendant Betty Green in restitution to Plaintiff, and such other and further relief as this Court deems just.

## COUNT VI
### District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901 *et seq.* - Wachovia Bank

61.     Plaintiff hereby incorporates paragraphs 1 through 60 above as if fully set forth herein.

62.     The allegations of paragraphs 1 through 60 above are incorporated additionally and cumulatively as violations of the D.C. Consumer Protection Procedures Act (CPPA).

63.     Powell Green is a "consumer" under the terms of the CPPA.

64.     Wachovia's actions constitute unlawful and unfair practices within the meaning of the CPPA. Such unlawful and unfair practices include, but are not limited to, Wachovia's representations to Powell Green that it would provide services to him by properly managing and handling his funds and his Accounts, upon which representations Powell Green reasonably relied, and which services were not provided as represented. As a direct and proximate result of Wachovia's unlawful and unfair practices, Plaintiff was damaged in an amount of at least $287,769.35.

65. Wachovia's violations of the CPPA were intentional, willful and wanton, and justify the imposition of treble and punitive damages.

WHEREFORE, Plaintiff Powell Green, respectfully prays that this Court enter judgment against Defendant Wachovia Bank in the amount of $1,500 per violation of CPPA, or treble the amount of $287,769.35 or such other amount of damages to Powell Green as may be shown by the evidence, whichever amount is greater; plus prejudgment and postjudgment interest; plus reasonable attorneys fees; plus punitive or exemplary damages in the amount of $1,000,000.00; plus costs; and such other and further relief as this Court deems just.

### COUNT VII
### Fraud – Betty Green

66. Plaintiff hereby incorporates paragraphs 1 through 65 above as if fully set forth herein.

67. Betty Green represented to Powell Green that any assistance she provided him with his affairs would be provided honestly and fairly, and Powell Green reasonably relied upon these representations.

68. During all times relevant to the allegations of this Complaint, Betty Green acted unfairly, dishonestly and with intent to defraud Powell Green of monies in the Accounts by preparing the Unauthorized Checks and Money Market Withdrawals, instituting the Unauthorized Transfers, requesting the ATM Card, conducting the ATM Withdrawals, withholding and concealing bank statements, making fraudulent misrepresentations, and engaging in other fraudulent activity with respect to the Accounts.

69. None of the funds appropriated from the Accounts by Betty Green evidenced a valid obligation of Powell Green to Betty Green.

70.    At the time Betty Green misappropriated funds from the Accounts, she knew or should have known that such funds did not represent a valid obligation of Powell Green to her and that the funds in the Accounts were the property of Powell Green.

71.    Betty Green intended to appropriate, and did appropriate, the said funds to her own use.

72.    The aforesaid actions by Betty Green were intentionally concealed from Powell Green by Betty Green, and Betty Green knew or should have known that such actions were false and deceitful when taken.

73.    As a direct and proximate result of the aforesaid acts of misrepresentations, fraud, concealment and deceit by Betty Green, Powell Green has been damaged in the sum of not less than $287,769.35.

74.    The aforesaid actions of Betty Green were taken willfully and maliciously thereby justifying an award of exemplary or punitive damages to deter such wrongdoing in the future.

WHEREFORE, Plaintiff Powell Green respectfully prays that this Court enter judgment against Defendant Betty Green in the amount of $287,769.35, plus interest thereon at the judgment rate, plus $1,000,000.00 in exemplary or punitive damages, plus costs, less any amounts paid by Defendant Betty Green in restitution to Plaintiff, and such other and further relief as this Court deems just.

## COUNT VIII
### Conversion – Betty Green

75.    Plaintiff hereby incorporates paragraphs 1 through 74 above as if fully set forth herein.

76.    The proceeds of the Unauthorized Checks, Money Market Withdrawals and the ATM Withdrawals, together with all funds in the Accounts, were the property of Powell Green, and Powell Green is entitled to immediate possession of the same.

77.    Betty Green took the proceeds of the Unauthorized Checks, the Money Market Withdrawals and the ATM Withdrawals, and any and all other funds withdrawn from the Accounts, without authority and with the intent to, and did, deprive Powell Green of possession thereof.

78.    The proceeds/funds taken by Betty Green are specific and identifiable.

79.    The aforesaid actions of Betty Green were taken willfully and maliciously thereby justifying an award of exemplary or punitive damages to deter such wrongdoing in the future.

WHEREFORE, Plaintiff Powell Green respectfully prays that this Court enter judgment against Defendant Betty Green in the amount of $287,769.35, plus interest thereon at the judgment rate, plus $1,000,000.00 in exemplary or punitive damages, plus costs, less any amounts paid by Defendant Betty Green in restitution to Plaintiff, and such other and further relief as this Court deems just.

**JURY TRIAL DEMANDED**

Respectfully Submitted,

POWELL GREEN

By counsel

Dawn C. Stewart, Esq. (DC Bar No. 458555)
Donna H. Henry, Esq. (DC Bar No. 414599)
STEWART & HENRY, PLLC
1050 Connecticut Ave., N.W.
Tenth Floor
Washington, DC 20036
(202) 772-1080
Fax: 202-521-0616

Amy R. Mix, Esq. (DC Bar No. 483483)
James T. Sugarman, Esq. (DC Bar No. 465885)
AARP Legal Counsel for the Elderly
601 E Street, NW
Washington, DC  20049
202.434.2171
Fax: 202.434.6464

Counsel for Plaintiff

IN THE SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA

POWELL GREEN,                    :
              Plaintiff      :
                            :
    v.                     :     C.A. No. 2006 CA 007523 B
                            :
WACHOVIA BANK, N.A.              :
        *et al.*                        :
             Defendants.    :

**PLAINTIFF POWELL GREEN'S FIRST SET OF
INTERROGATORIES AND REQUEST FOR PRODUCTION OF
<u>DOCUMENTS TO DEFENDANT WACHOVIA BANK</u>**

To:   WACHOVIA BANK, N.A.
       (hereinafter "Wachovia" or "Defendant")

      COMES NOW, the Plaintiff, Powell Green ("Powell Green" or "Plaintiff") by and through his undersigned counsel, and, pursuant to D.C. Rules of Civil Procedure 33 and 34, propounds his First Set of Interrogatories and Request for Production of Documents to Defendant Wachovia Bank, to be answered, under oath, within forty-five (45) days after service, this discovery being filed simultaneously with the Summons and Complaint.

## I.    <u>FIRST SET OF INTERROGATORIES</u>

**A.   DEFINITIONS AND INSTRUCTIONS**

      (a) These Interrogatories are continuing in character so as to require you to supplement your responses as required by the D.C. Rules of Civil Procedure.

      (b) Where the name of a person is requested, indicate the full name, and business address of such person.

(c)  Where knowledge or information in possession of a party is requested, such request includes knowledge of the party's agents, officers, directors, employees and unless privileged, his attorneys.

(d)  The pronoun "you" refers to the party to whom these Interrogatories are addressed and the persons mentioned in clause "c."

(e)  "And" as well as "or" shall be construed either distinctively or conjunctively as necessary to bring within the scope of your responses that which might otherwise be construed to be outside the scope.  "Each" shall be construed to include the word "every," and "every" shall be construed to include the word "each."  "Any" shall be construed to include the word "all," and "all" shall be construed to include the word "any."

(f)  The use of a verb in any tense shall be construed as the use of the verb in all tenses, wherever necessary to bring within the scope of the specification or request all responses which might otherwise be construed to be outside its scope.

(g)  A plural noun shall be construed as a singular noun and a singular noun shall be construed as a plural noun, whenever necessary to bring within the scope of the specification all documents which might otherwise be construed to be outside its scope.

(h)  The word "document" or "documents" is used in its customary broad sense and includes all written, typed, printed or recorded or graphic statements, communications or other matter, however produced or reproduced in your possession, custody, or control, including, without limitation, all writings; studies; analyses; tabulations; evaluations; reports; reviews; agreements; contracts; communications; letters or other correspondence (including e-mails and "chat" logs); messages; telegrams; telexes; cables; memoranda; records; notes; reports; summaries; diaries; job records; construction records; invoices; purchase orders; change orders; proposed changes; schedules; plans; specifications; meeting minutes; sound recordings or transcripts of personal or telephone conversations, meetings, conferences or interviews; telephone toll records; desk calendars; appointment books; forecasts; accountants' work papers; drawings; graphs; charts; maps; diagrams; blueprints; estimates; bid preparation; tables; indexes; pictures; photographs; films; phonograph records; tapes; microfilm; microfiche; charges; ledgers; accounts; cost sheets; financial statements or reports; statistical or analytical records; minutes or records of boards of directors, committee or other meetings or conferences; reports or summaries of any investigation; claims; opinions or reports of consultants or experts; appraisals; reports or summaries of negotiation; books; brochures; pamphlets; circulars; trade letters; press releases; newspaper and magazine clippings; stenographic; handwritten or any other notes; notebooks; projections; court or arbitration papers or pleadings; working papers; checks (front and back); check stubs or receipts; invoice vouchers; tape data sheets or data processing cards or disks or any other written, recorded, transcribed, punched, taped, filed or graphic matter, however produced or reproduced; and any other document, writing, or other data, compilation of whatever description, including but not limited to any information contained in any computer, although not yet printed out or in the memory units containing such data from which

2

information can be obtained or translated into reasonable usable form, and all drafts and non-identical copies of the foregoing.

(i) A document "relates to" a particular fact, matter or event when it proves or disproves, or tends to prove or disprove, that fact, matter, or event or contains information concerning, explaining, or providing a background for understanding that fact, matter or events, or could lead to additional relevant information concerning, explaining, or providing a background for understanding that fact, matter or event, or was produced, altered or signed as a part of or as a result of that fact, matter or event.

(j) As used herein "communication" means any documentary or non-documentary transmission of information and shall include, but not be limited to, oral statements, telephone conversations, negotiations, conferences or meetings, e-mails, and other on-line or computer communication, however formal or informal.

(k) To "identify" a document or state the "identity of" a document shall mean to state with respect thereto the identity of the person who prepared it, the identity of the persons who signed it or over whose signature it is issued, he identity of each person to whom it was addressed or distributed, the nature and substance of the document with sufficient particularity to enable it to be identified, the date, if any, the document bears, and the present location of the document and the identity of its custodian or custodians.

(l) To "identify" or to state the "identity of" a person shall mean to state with respect thereto the person's full name; the person's title and business or professional affiliation, if any, as of the time to which the answer relates; the person's present title and business or professional affiliation, if any; the person's present business or professional and residence addresses and phone numbers.

(m) To "identify" a communication shall mean to state with respect thereto the identity of each person who participated in the communication and the identity of each person who was present at the time such communication was made; the date and place where such communication was made; what each such person communicated; and the identity of all documents pertaining to such communication.

(n) "You" and "Your," means Wachovia Bank or any agent, employee or servants of Wachovia Bank.

(o) "You" refers to the party to whom this discovery is directed. If the answer to the interrogatory is made by one other than the person signing the oath, for each such answer, give the name, address, title and/or description of such person.

(p) "Complaint" means the Complaint filed in this matter by Powell Green. "Answer" means the Answer or other pleadings filed in this matter by Wachovia in response to the Complaint.

(q)    As used herein, all capitalized terms shall have the meaning, and all individual persons shall have the identity, set forth in the Complaint, unless otherwise indicated.

**B.    INTERROGATORIES PROPOUNDED**

1.  Identify all persons, including but not limited to persons employed by and/or affiliated with Wachovia, with any knowledge whatsoever regarding (i) the matters raised in the Complaint or the Answer; or (ii) Powell Green, John Green, and/or Betty Green.  With respect to each such person identified, state in detail the information he possesses; if applicable, the dates during which such person was employed by or affiliated with Wachovia and the job title and role of such person at Wachovia; and if such person is no longer employed by Wachovia, the reason for the termination.

ANSWER:

2.  Identify each teller, CSR, or other Wachovia employee who was involved in establishing either or both of the Accounts, and the branch at which the Accounts were established.

ANSWER:

3.  Identify all accounts at Wachovia (other than the Accounts) existing as of October 1, 2003, or established thereafter, in the name(s) of Powell Green, Betty Green, and/or John Green, and with respect to each account identified, please state (i) the type of account (checking, certificate of deposit, money market, etc.); (ii) the teller, CSR, or other Wachovia employee who established such account; (iii) the account number; (iv)

the owner of the account (including all co-owners, beneficiary designations, POD designations, etc.); and (v) the date(s) the accounts were opened and closed.

ANSWER:


4. State whether any employee of Wachovia involved in any way with the Accounts or with the matters raised in the Complaint or Answer, knew or had any relationship, personal or professional, with Betty Green and/or John Green and/or Powell Green on or after October 1, 2002, and if so, state the nature and duration of the relationship.

ANSWER:


5. Identify all of the agreements, documents or communications which you contend constitute the contractual agreement between Wachovia and Powell Green relating to the rights and obligations of the parties with respect to the Accounts. With respect to each agreement, document or communication identified, please state whether, and if so, when, such document was delivered or given to Powell Green, who it was given by, to whom it was given, and the method by which it was so transferred.

ANSWER:


6. Identify all persons Wachovia contends are or ever were authorized to sign on, make withdrawals or transfers from each of the Accounts, and with respect to each

person identified, state the nature of his or her authority and the date he or she acquired

such authority, and if applicable, the date he or she lost such authority.

ANSWER:


7.   Identify all persons Wachovia contends are or ever were authorized to

request, accept, or use the ATM Card.

ANSWER:


8.   With respect to the ATM Card, please identify (i) the individual requesting

the card, the means by which it was requested, and the address to which or individual to

whom it was delivered by Wachovia; and (ii) each teller, CSR or other Wachovia

employee involved in any way with the request or issuance of the ATM Card, and the

nature and substance of each person's involvement.

ANSWER:

12. State whether any activity within the Accounts during the time period October 1, 2003 – October 31, 2004 did trigger or should have triggered any internally generated fraud alerts or similar warnings.  If such alerts were triggered, identify each alert, identify to whom it was delivered, and state what actions were taken upon it.

ANSWER:

13. Identify all documents, notifications and communications Wachovia received from Powell Green, John Green, or parties acting on their behalf, relating to possible fraudulent activity on the Accounts, including the date thereof, and state how and when Wachovia responded to each of them.

ANSWER:

14. Identify and state all of Wachovia's policies and procedures relating to matters raised in the Complaint, including but not limited to opening individual accounts, including accounts for disabled and elderly customers; obtaining and verifying signature cards; cashing checks for "cash;" verifying check signatures; unauthorized and forged checks; issuing ATM Cards; unauthorized and fraudulent ATM transactions; transfers between accounts; maximum ATM transactions and/or cash withdrawals during a particular time period.

ANSWER:

15. Describe in detail information you have indicating that Wachovia, or any of its employees or agents, was aware of or was knowingly involved in the preparation, presentation and cashing of any unauthorized check drawn on the Accounts, in the transfers of funds between the Money Market Account and the Checking Account, in the issuance or use of the ATM Card, or any other alleged actions or conduct which caused damage to Powell Green as set forth in the Complaint. With respect to any information disclosed, state when and how you became aware of such information and identify all persons with personal knowledge of such information.

ANSWER:

16. Identify any internal investigations conducted by Wachovia with respect to the Accounts or any matters raised in the Complaint or Answer, the person(s) conducting the investigation(s), the results of the investigation(s), and any document or report relating to the investigation(s).

ANSWER:

17. Identify all contacts and communications between Wachovia and any law enforcement officials relating to the Accounts or matters raised in the Complaint or Answer, and identify all person(s) involved in the contacts, any documents produced to or by Wachovia, and to whom they were produced, any interviews conducted by law

enforcement officials, the results of such investigations to Wachovia's knowledge, and any reports of such law enforcement investigations.

ANSWER:


18. Identify the existence and contents of any insurance agreement which may be liable to satisfy or indemnify part or all of a judgment or settlement in this matter. With respect to each agreement identified state the name of the insurance carrier, the type of coverage, the loss of which you anticipate it could be applicable, the names of the beneficiaries of the policies, the coverage period, and the policy limits.

ANSWER:


19. Identify all persons you expect to call as experts at trial, and with respect to each expert identified, state the subject matter upon which he is expected to testify, the substance of the facts and opinions to which he is expected to testify, and a summary of the grounds for each opinion.

ANSWER:


20. Identify all persons who assisted in answering these Interrogatories or in responding to the Request for Production of Documents.

ANSWER:

21. State any and all facts not otherwise stated above which relate to any matters alleged in the Complaint or Answer or support and/or refute your denial of any portion of Plaintiff's claim.

ANSWER:

## II.    PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS

### A.    DEFINITIONS AND INSTRUCTIONS

When producing the documents, you should organize and label them where appropriate to correspond with the categories in this request. For the purpose of these requests, the following instructions apply:

(a)  Produce all responsive documents within your possession, custody, or control, or in the possession, custody or control of your attorneys, accountants or other agents, or trustees, wherever located.

(b)  Produce each document requested herein with an indication of the particular paragraph or subparagraph hereof to which the document is responsive.

(c)  "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of your responses that which might otherwise be construed to be outside the scope.  "Each" shall be construed to include the word "every," and "every" shall be construed to include the word "each." "Any" shall be construed to include the word "all," and "all" shall be construed to include the word "any."

(d)  The use of a verb in any tense shall be construed as the use of the verb in all tenses, wherever necessary to bring within the scope of the specification or request all responses which might otherwise be construed to be outside its scope.

(e)  A plural noun shall be construed as a singular noun and a singular noun shall be construed as a plural noun, whenever necessary to bring within the scope of the specification all documents which might otherwise be construed to be outside its scope.

(f)  If any request for documents is deemed to call for the production of privileged materials of whatever kind, and such privilege is asserted, identify in writing each document so withheld and provide the following information:

1.    The reason for withholding the document;

11

2.     A statement of the basis for the claim of privilege, work product or other ground of non-disclosure;

3.     A brief description of the document, including:

    (i)     the date of the document;

    (ii)    the number of pages, attachments and appendixes;

    (iii)   the names of its author(s), or prepare(s) and an identification by employment and title of each such person;

    (iv)   the name of each person who was sent, shown or blind- or carbon-copied the document, or has had access to or custody of the document, together with an identification of each such person;

    (v)    the present custodian;

    (vi)   the subject matter of the document, and in the case of any document relating or referring to a meeting or conversation, identification of such meeting or conversation.

(g)  Where documents in the possession, custody or control of any firm, corporation or partnership are requested, such request also pertains to documents in the possession, custody or control of employees, agents, next friends, guardians, representatives, and, unless privileged or protected, attorneys of such firms, corporations or partnerships.

(h)  With respect to any responsive document which was formerly in your possession, custody or control, and has been lost, destroyed, or is no longer in your possession for any other reason, state:

1.     The type of document;

2.     The subject matters and contents of the document;

3.     The author of the document;

4.     Each person to whom the original or a copy of the document was sent;

5.     The date on which the document was prepared or transmitted;

6.     The date on which the document was lost or destroyed and, if destroyed, the condition of and reasons for such destruction and the persons requesting and performing the destruction.

(i) All requests should be given their broadest interpretation.

For purposes of these requests, the following definitions apply:

(j) As used herein, "person" means any natural person, any corporation, partnership, association, joint venture, sole proprietorship, firm or other business enterprise or legal entity and means both the singular and plural.

(k) As used herein, the word "document" or "documents" is used in its customary broad sense and includes all written, typed, printed or recorded or graphic statements, communications or other matter, however produced or reproduced in your possession, custody, or control, including, without limitation, all writings; studies; analyses; tabulations; evaluations; reports; reviews; agreements; contracts; communications; letters or other correspondence; messages; telegrams; telexes; cables; memoranda; records; notes; reports; summaries; diaries; job records; construction records; invoices; purchase orders; change orders; proposed changes; schedules; plans; specifications; meeting minutes; sound recordings or transcripts of personal or telephone conversations; meetings; conferences or interviews; telephone toll records; desk calendars; appointment books; forecasts; accountants' work papers; drawings; graphs; charts; maps; diagrams; blueprints; estimates; bid preparation; tables; indexes; pictures; photographs; films; phonograph records; tapes; microfilm; microfiche; charges; ledgers; accounts; cost sheets; financial statements or reports; statistical or analytical records; minutes or records of boards of directors; committee or other meetings or conferences; reports or summaries of any investigation; claims; opinions or reports of consultants or experts; appraisals; reports or summaries of negotiation; books; brochures; pamphlets; circulars; trade letters; press releases; newspaper and magazine clippings; stenographic; handwritten or any other notes; notebooks; projections; court or arbitration papers or pleadings; working papers; checks (front and back); check stubs or receipts; invoice vouchers; tape data sheets or data processing cards or disks or any other written, recorded transcribed, punched, taped, filed or graphic matter, however produced or reproduced; and any other document, writing, or other data, compilation of whatever description, including but not limited to any information contained in any computer, although not yet printed out or in the memory units containing such data from which information can be obtained or translated into reasonable usable form, and all drafts and non-identical copies of the foregoing.

(l) As used herein "communication" means any documentary or non-documentary transmission of information and shall include, but not be limited to, oral statements, telephone conversations, email transmissions, negotiations, conferences or meetings, however formal or informal.

(m) "You" and "Your" means Wachovia or any agent, employee or servants of the Atlantic Financial.

(n) "Complaint" means the Complaint filed in this matter by Powell Green.

(o) "Answer" means the Answer or other pleadings to Complaint filed in this matter by Wachovia in response to the Complaint.

(p) **All capitalized terms shall have the meaning, and all individual persons shall have the identity, set forth in the Complaint unless otherwise indicated.**

**B.    REQUEST FOR PRODUCTION OF DOCUMENTS**

1.    Please produce all documents identified in or referred to in preparation of the foregoing Interrogatories.

2.    Please produce all documents whatsoever relating to the Accounts, or the ATM Card, including but not limited to signature cards, deposit agreements, correspondence, notes, and fraud, police and/or internal investigation reports.  At this time, this request does not include a request for statements or copies of checks and deposit items relating to the Accounts.

3.    Please produce all documents whatsoever relating to Powell Green, John Green, and/or Betty Green or any Wachovia accounts in the name of any of them.  This request does not include a request for statements or copies of checks and deposit items relating to the Accounts (as defined in the Complaint).

4.    Please produce all documents which you contend relate to or form the basis of Wachovia's contractual duty to Powell Green.

5.    Please produce all documents, including but not limited to books, pamphlets, employee instructions, rules, manuals, training publications, correspondence, memoranda, e-mails or meeting minutes, touching, concerning, or pertaining to Wachovia's policies and procedures for handling any of the matters or events raised in the Complaint including but not limited to policies and procedures for opening individual accounts, including accounts for elderly and/or disabled customers, obtaining and verifying signature cards, verification of signatures on instruments, cashing checks for "cash," issuing ATM Cards, making transfers between customer accounts, contacting customers in the event of questionable account activity, identifying and handling of

14

unauthorized and/or forged checks, identifying and handling unauthorized ATM transactions, making refunds to customers for unauthorized or fraudulent activity and/or banking guidelines for teller/customer transactions for the period October 1, 2003 to the present.

6.     Please produce all other documents relating in any way to the matters raised in the Complaint or the Answer.

Respectfully Submitted,

**POWELL GREEN**
By Counsel

Dawn C. Stewart, Esq. (DC Bar No. 458555)
Donna H. Henry, Esq. (DC Bar No. 414399)
STEWART & HENRY, PLLC
1050 Connecticut Ave., N.W.
Tenth Floor
Washington, DC 20036
(202) 772-1080
Fax: 202-521-0616

Amy R. Mix, Esq. (DC Bar No. 483483)
James T. Sugarman, Esq. (DC Bar No. 465885)
AARP Legal Counsel for the Elderly
601 E Street, NW
Washington, DC  20049
202.434.2171
Fax: 202.434.6464

Counsel for Plaintiff

15

IN THE SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA

POWELL GREEN,                          )
                                       )
    Plaintiff,                         )
                                       )
v.                                     )          Civil Action No. 0007523-06
                                       )
WACHOVIA BANK, N.A., *et al.*          )
                                       )
    Defendants.                        )
_____)

## DEFENDANT WACHOVIA BANK'S ANSWER AND MOTION TO DISMISS

Defendant Wachovia Bank, N.A. (the "Bank), by counsel, answers the numbered paragraphs of the Complaint (the "Complaint") filed by Plaintiff, Powell Green ("Plaintiff") to Counts 1, 2, and 5 and states for its Motion to Dismiss to Counts 3, 4 and 6, as follows:

### ANSWER

1.    The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 1 and consequently denies the same.

2.    Admitted.

3.    The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 3 and consequently denies the same.

4.    Admitted.

5.    The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 5 and consequently denies the same.

6.    The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 6 and consequently denies the same.

7.    Admitted.

8.      The Bank admits that the High Performance Money Market Account No. xxxxxxxxx9460 was established on November 6, 2003.  The Bank is without sufficient knowledge of the truth or falsity of the remaining allegations of paragraph 8 and consequently denies the same.

9.      The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 9 and consequently denies the same.

10.     The Bank admits that the Accounts were titled jointly in the names of Powell Green and John Green.  The Bank is without sufficient knowledge of the truth or falsity of the remaining allegations of paragraph 10 and consequently denies the same.

11.     The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 11 and consequently denies the same.

12.     The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 12 and consequently denies the same.

13.     The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 13 and consequently denies the same.

14.     The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 14 and consequently denies the same.

15.     The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 15 and consequently denies the same.

16.     The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 16 and consequently denies the same.

17.     The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 17 and consequently denies the same.

18.     The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 18 and consequently denies the same.

19.     The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 19 and consequently denies the same.

20.     The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 20 and consequently denies the same.

21.     The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 21 and consequently denies the same.

22.     The Bank admits that an "ATM" card was issued by Wachovia in March 2004. The Bank is without sufficient knowledge of the truth or falsity of the remaining allegations of paragraph 22 and consequently denies the same.

23.     The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 23 and consequently denies the same.

24.     The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 24 and consequently denies the same.

25.     Denied.

26.     The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 26 and consequently denies the same.

27.     The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 27 and consequently denies the same.

28.     The Bank is without sufficient knowledge of the truth or falsity of the allegations of paragraph 28 and consequently denies the same.

29.     Admitted that Wachovia did not recredit Plaintiff's accounts; Wachovia denies the remaining allegations of paragraph 29.

30.     Paragraph 30 incorporates paragraphs 1 through 29; consequently, the Bank's response to Paragraph 30 repeats its responses to paragraphs 1 through 29.

31.     Denied.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied.

36.     Denied.

37.     Paragraph 37 incorporates paragraphs 1 through 36; consequently, the Bank's response to Paragraph 37 repeats its responses to paragraphs 1 through 36.

38.     Denied.

39.     Denied.

40.     Denied.

41.     Denied.

42.     Denied.

43.     Denied.

44.     Paragraph 44 incorporates paragraphs 1 through 43; consequently, the Bank's response to Paragraph 44 repeats its responses to paragraphs 1 through 43.

45.     Paragraph 45 references a document which speaks for itself.  The Bank denies any characterizations of the document contained in paragraph 45.  The Bank denies any remaining allegations in paragraph 45.

46.     Paragraph 46 references a document which speaks for itself. The Bank denies any characterizations of the document contained in paragraph 46. The Bank denies any remaining allegations in paragraph 46.

47.     Denied.

48.     Denied.

49.     Paragraph 49 incorporates paragraphs 1 through 48; consequently, the Bank's response to Paragraph 49 repeats its responses to paragraphs 1 through 48.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Paragraph 55 incorporates paragraphs 1 through 54; consequently, the Bank's response to Paragraph 55 repeats its responses to paragraphs 1 through 54.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Paragraph 61 incorporates paragraphs 1 through 60; consequently, the Bank's response to Paragraph 61 repeats its responses to paragraphs 1 through 60.

62.     Paragraph 62 incorporates paragraphs 1 through 61; consequently, the Bank's response to Paragraph 62 repeats its responses to paragraphs 1 through 61.

63.    Denied.

64.    Denied.

65.    Denied.

66.    Paragraphs 66 through 79 of the Complain are directed to Defendant Betty Green; consequently, the Bank denies the allegations in paragraphs 66 through 79.

67.    All remaining allegations in the Complaint are denied.

## MOTION TO DISMISS

1.    Plaintiff's claim of breach of contract (Count 3) is preempted by the Uniform Commercial Code, as adopted by the District of Columbia.

2.    Plaintiff's claim of negligence (Count 4) is preempted by the Uniform Commercial Code, as adopted by the District of Columbia.

3.    Plaintiff fails to state a claim under the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq* (Count 6). To the extent that the alleged representations occurred before Plaintiff entered into the contract of deposit, then those representations are merged into the contract and his claim under Count 6 is barred by the parol evidence rule. To the extent that the alleged representations are contained in the contract, the contractual provisions control. Moreover, the Uniform Commercial Code, as adopted by the District of Columbia, controls the relationship between the bank and its customer.

## AFFIRMATIVE DEFENSES

1.    The Complaint fails to state a claim upon which relief can be granted.

2.    Plaintiff's claims are barred by the terms of the contract of deposit between Plaintiff and the Bank, including the Deposit Agreement and Disclosures for Personal Accounts.

3.    Plaintiff's claims are barred by the applicable provisions of the Uniform Commercial Code, as adopted by the District of Columbia.

4.    Plaintiff's claims are barred by the applicable statute of limitations.

5.    Plaintiff has not been damaged in either the manner or to the extent alleged.

6.    Plaintiff's damages, if any, were proximately caused by the acts of a third-person over whom the Bank has no authority or control.

7.    Plaintiff's claims are barred due to the Plaintiff's failure to exercise reasonable promptness and/or diligence in examining the statements of account or the items to determine whether the maker signatures were unauthorized.

8.    Plaintiff's claims are barred because the Bank paid the items in good faith.

9.    Plaintiff's claims are barred because the maker signatures on the subject checks were authorized.

10.    The Bank is entitled to recover its attorneys' fees and costs incurred in this litigation pursuant to the contract of deposit.

WHEREFORE, for the foregoing reasons, Wachovia Bank, N.A., respectfully requests that the Complaint be dismissed and that the Bank be awarded its attorneys' fees and costs incurred herein.

WACHOVIA BANK, N.A.

By: _____
Of Counsel

Grady C. Frank, Jr., D.C. Bar No. 433469
TROUTMAN SANDERS LLP
1660 International Drive, Suite 600
McLean, Virginia 22102
Telephone: (703)734-4334
Facsimile: (703) 734-4340
*Counsel for Wachovia Bank, N.A.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _6th_ day of November, 2006, a true and accurate copy of the foregoing Notice of Filing Notice of Removal was served by first-class mail, postage prepaid, to:

Dawn C. Stewart, Esquire
Donna H. Henry, Esquire
STEWART & HENRY, PLLC
1050 Connecticut Avenue, N.W.
Tenth Floor
Washington, DC 20036

Amy R. Mix, Esquire
James T. Sugarman, Esquire
AARP Legal Counsel for the Elderly
601 E Street, N.W.
Washington, DC 20049

307041

8

IN THE SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| POWELL GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 0007523-06 |
| | ) | |
| WACHOVIA BANK, N.A., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT WACHOVIA BANK'S
## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant Wachovia Bank, N.A. ("the Bank"), by counsel, in support of its

Memorandum in Support of its Motion to Dismiss, represents as follows:

### INTRODUCTION

In his Complaint, Plaintiff Powell Green ("Powell Green") alleges that he established a

Crown Classic Banking checking account (the "Checking Account") at Wachovia on October 10,

2003, and established a High Performance Money Market Account (the "Money Market

Account") at Wachovia on November 3, 2003 (collectively, the "Accounts"). (Complaint

¶¶ 7 - 8). The Accounts were titled jointly in the names of Powell Green and John Green, his

brother. (Complaint ¶ 10). The Money Market Account was established with $287,841.17, and

the Checking Account was established with a deposit of $2,000.00. (Complaint ¶ 14). The

Checking Account continued to receive by automatic deposit Powell Green's Veterans

Administration Benefits checks and his Social Security Benefits checks each month. (Complaint

¶ 15). Essentially Powell Green avers that Betty Green, John Green's wife and Powell Green's

sister-in-law, helped herself to all the funds in these Accounts without the knowledge or consent

of Powell Green or John Green. (Complaint ¶¶ 17 – 28). Specifically, Powell Green avers that

the following transactions were unauthorized by either Powell Green or John Green:

1. Forged maker checks from the Money Market Account: From November 12, 2003, through December 19, 2003, approximately six checks totaling $25,200.00, made payable to Betty Green and purportedly signed by Powell Green as drawer. (Complaint ¶ 17).

2. Unauthorized withdrawals from the Money Market Account: On November 13, 2003, December 1, 2003, and December 19, 2003, totaling $7,500.00 upon the purported signature of Powell Green. (Complaint ¶ 18).

3. Unauthorized transfers from Money Market Account to Checking Account: From December 26, 2003, through October 2004, approximately 52 transfers, totaling $255,800.00. These transactions are reflected as "Bank Assisted Transfers" on the Money Market Account and are accompanied by a $3.00 bank fee. (Complaint ¶ 19).

4. Forged maker checks from the Checking Account: From October 19, 2003, through September 18, 2004, approximately 84 checks, totaling $122,217.40, purportedly signed by John Green as maker. (Complaint ¶ 20).

5. Forged maker checks from the Checking Account: From December 19, 2003, through May 28, 2004, approximately 11 checks, payable to Betty Green, totaling $11,840.00, purportedly signed by Powell Green as maker. (Complaint ¶ 21).

6. Unauthorized ATM card issued for the Checking Account in March 2004. Betty Green is alleged to have requested the card. (Complaint ¶¶ 22 – 23).

7. Unauthorized ATM transactions: From March 22, 2003, through October 2004, approximately 417 ATM transactions, totaling $120,173.95). (Complaint ¶ 24).

Plaintiff asserts multiple claims against Wachovia: (1) violations of the Uniform

Commercial Code ("UCC") as codified by the District of Columbia in D.C. Code § 28:3-403, 3-

406; (2) violations of UCC § 4-401, *et seq.*, (3) breach of contract, (4) negligence, (5) negligence

*per se* based on alleged violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693, and (6)

2

violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.* Wachovia moves to dismiss counts 3, 4, and 6 of Plaintiff's Complaint.

## ARGUMENT

### A.     Standard of Review

A Rule 12(b)(6) motion tests the legal sufficiency of the Complaint and "admits all facts well pleaded but contests the plaintiff's right to any recovery based on those facts." *Herbin v. Hoeffel*, 727 A.2d 883, 886 (D.C. 1999) (citing *American Ins. Co. v. Smith*, 472 A.2d 872, 874 (D.C. 1984)). A Complaint may be dismissed for failure to state a claim upon which relief may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Larijani v. Georgetown University*, 791 A.2d 41, 43 (D.C. 2002) (citing *Owens v. Tiber Island Condo. Ass'n*, 373 A.2d 890, 893 (D.C. 1977)). For purposes of a Rule 12(b)(6) motion, "the complaint must be construed in the light most favorable to the plaintiff, and its allegations taken as true." *McBryde v. Amoco Oil Co.*, 404 A.2d 200, 202 (D.C. 1979) (per curiam); *see also Abdullah v. Roach*, 668 A.2d 801, 804 (D.C. 1995).

With these standards in mind, the Court should dismiss the Complaint because, even taking Powell Green's allegations as true, Powell Green can prove no set of facts in support of his claims of breach of contract, negligence and violations of the D.C. Consumer Protection Procedures Act which would entitle him to relief against the Bank.

### B.     Plaintiff's Claims for Negligence and Breach of Contract are Preempted by the U.C.C.

Counts 3 and 4 of Plaintiff's Complaint, asserting common law negligence and breach of contract, against the Bank are preempted by the D.C. U.C.C. Plaintiff's claims relate to the relationship between a depository bank and its customer, and are thus controlled by Articles 3

3

and 4 of Title 28 of Subtitle 1 of the D.C. Code. Plaintiff cannot recover against the Bank under

negligence and breach of contract theories as these common law claims have been displaced and

preempted by the specific provisions of Article 4.

> The starting point for analysis is D.C. Code § 28:1-103, which provides:
>
> Unless displaced by the particular provisions of this subtitle, the principles of law
> and equity, including the law merchant and the law relative to capacity to contract,
> principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake,
> bankruptcy, or other validating or invalidating cause shall supplement its
> provisions.

A basic proposition is that the UCC is to be "liberally construed and applied to promote its

underlying purposes and policies," which include simplifying and clarifying the law governing

commercial transactions, fostering the expansion of commercial practices, and standardizing the

laws of the various jurisdictions. *See* D.C. Code § 28:1-102. While the D.C. courts have not yet

decided the issue of whether the D.C. U.C.C. preempts a common law claims of negligence and

breach of contract, other jurisdiction's analysis and treatment is instructive. The Third Circuit

Court of Appeals in *New Jersey Bank, N.A. v. Bradford Securities Operations, Inc.*, 690 F.2d 339,

346 (3rd Cir. 1982), explained that the UCC does not displace the common law remedies except

insofar as their reliance on the common law would thwart the purposes of the UCC. Thus,

common law claims as they apply to the duties of a depository bank are displaced only to the

extent that the UCC contains particular provisions regarding those duties. *See Sebastian v. D&S*

*Express, Inc.*, 61 F. Supp. 2d 386, 391 (D. N.J. 1999); *see also Bradley v. First Nat'l Bank of*

*Walker, N.A.*, 711 N.W.2d 121, 127-28 (Minn. 2006); *Mahaffy & Associates, Inc. v. Long*, 2003

Del. Super. LEXIS 351, at *18 (Sept. 29, 2003) (citations omitted). Stated differently, the

Supreme Court of Alabama has held that "common law claims are displaced or preempted if

allowing the common-law claims would 'create rights, duties and liabilities inconsistent'" with

those set forth in the state's codification of the UCC. *AmSouth Bank v. Tice*, 923 So. 2d 1060, 1066 (Ala. 2005).

Here, Powell Green asserts that Wachovia breached its deposit agreement with Powell Green by paying the unauthorized checks and money market withdrawals without authorization from Powell Green or John Green. Powell Green also asserts that Wachovia was negligent by failing to "exercise reasonable care in the handling of his funds and Accounts, to comply with reasonable commercial standards in handling of his funds and accounts, and to comply with its contractual obligations to him." (Complaint ¶ 50). Powell Green further avers that Wachovia had a duty to notify him of "suspicious activity" on his Accounts. (Complaint ¶ 51). These alleged duties in support of Powell Green's common law claims of breach of contract and negligence are displaced and preempted by the D.C. UCC. Article 4 of the UCC exclusively governs the relationship between a bank and its depositor. More particularly, D.C. Code § 28:4-406 is the specific provision, for example, that sets forth the customer's duty to discover and report unauthorized signatures or alterations, and the preclusions associated with the failure to comply with statutory duties. Thus, where the legislature has preempted the field by enacting a provision in the UCC that establishes the rights, duties, and remedies of the parties, common law actions, such as Plaintiff seeks to assert in Counts 3 and 4, cannot be maintained. *See AmSouth Bank*, 923 So. 2d at 1066; *see also Mahaffy & Associates, Inc*, 2003 Del. Super. LEXIS at *18; *Gina Chin & Assoc. v. First Union Bank*, 256 Va. 59, 62, 500 S.E.2d 516, 517-18 (1998) (common law negligence claims against a Bank for accepting forged checks preempted by U.C.C.). Accordingly, Wachovia's Motion to Dismiss Counts 3 and 4 should be sustained.

**C.    Plaintiff fails to state a claim under the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.***

Plaintiff alleges that Wachovia violated the D.C. Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901, *et seq.*, by making "representations to Powell Green that it would provide services to him by properly managing and handling his funds and his Accounts, upon which representations Powell Green reasonably relied, and which services were not provided as represented." (Complaint ¶ 64). Plaintiff's claim should be dismissed for several reasons.

As a preliminary matter, Plaintiff's Complaint does not reference the representations Wachovia allegedly made to Powell Green. In order to state a claim for misrepresentation under the CPPA, DC law requires that such misrepresentations be alleged and proved by clear and convincing evidence. *See, Osbourne v. Capital City Mortgage Corp.*, 727 A.2d 322, 326 (D.C. 1999). Here, it is completely unclear what misrepresentations Powell Green alleges Wachovia made upon which he relied. If, for example, these "misrepresentations" occurred before Powell Green opened his account and before he signed the terms and conditions contained in the Deposit Agreement and Disclosures for Personal Account, then his claim is barred by the parol evidence rule because any such prior representations are deemed merged into the deposit agreement contract. In that case, of course, the terms of the contract control, and Powell Green's purported CPPA claim is nothing more that a breach of contract claim. Moreover, if the Court requires a similar entrepreneurial nexus between a misrepresentation and the CPPA claim as it did in *Dorn v. McTigue*, 157 F. Supp. 2d 37, 46-47 (D.D.C. 2001) (to recover for a physician's misrepresentations the plaintiff must prove by clear and convincing evidence that the claim at issue was generated by an entrepreneurial motive), then Powell Green's allegations fall far short of establishing this nexus.

In addition, Powell Green's claim is duplicative of and, accordingly, displaced and preempted by the UCC. In addition to the provisions of D.C. Code § 28:1-103, *supra*, "It is a cardinal rule of law that statutes complete in themselves, relating to a specific thing, take precedence over general statutes or other statutes which deal only incidentally with the same question or which might not be related to it." *Chelsea Plaza Homes, Inc. v. Moore*, 226 Kan. 430, 601 P.2d 1100 (1979) (holding that Residential Landlord Tenant Act preempts its field making remedies under the Consumer Protection Act unavailable for violations covered by the Landlord Tenant Act); *cf.* D.C. Code § 28-3903(c)(2)(A) (CPPA not applicable to landlord-tenant relations). Similarly, in the deciding whether a patient could recover damages from a physician under the CPPA, the D.C. Court of Appeals noted that such a claim "would be more appropriately addressed in the context of a medical malpractice claim." *Caulfield v. Stark*, 893 A.2d 970 (D.C. App. 2006) (quoting *Nelson v. Ho*, 222 Mich. App. 74, 564 N.W.2d 482, 487 (Mich. Ct. App. 1997)). Here too, the U.C.C. is more specifically tailored to address the nature of Powell Green's complaints. Powell Green's claims arise from the relationship between a bank and its customer, which is governed by the provisions of the UCC and the terms of the deposit agreement. In contrast, the CPPA "was designed to police trade practices arising only out of consumer-merchant relationships." *Howard v. Riggs Nat'l Bank*, 432 A.2d 701, 709 (D.C. App. 1981). The CPPA provides the following definitions:

> "Consumer" means a person who does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or services, or a person who does or would supply the goods or services which are or would be the subject matter of a trade practice;…

> "Trade practice" means any act which does or would create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer of consumer goods or services;…

"Goods and services" means any and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes consumer credit, franchises, business opportunities, real estate transactions, and consumer services of all types.

D.C. Code § 28-3901(a). The D.C. Court of Appeals has noted that "while a 'merchant' is not

limited to the actual seller of the goods or services complained of, he must be a 'person'

connected with the 'supply' side of a consumer transaction." *Save Immaculata/Dunblane, Inc. v.*

*Immaculata Preparatory Sch.*, 514 A.2d 1152, 1159 (1986) (holding nonprofit educational

institution is not a "merchant" within the context of the Consumer Protection Procedures Act).

Here, there is no allegation or inference to be made that Wachovia was connected to the "supply"

side of a consumer transaction. Therefore, Plaintiff's claim in Count 6 should be dismissed as a

matter of law.

## CONCLUSION

For the foregoing reasons, Wachovia Bank, N.A. respectfully requests that Counts 3, 4

and 6 of the Complaint be dismissed with prejudice.

WACHOVIA BANK, N.A.


By: _____
        Of Counsel

Grady C. Frank, Jr., D.C. Bar No. 433469
Troutman Sanders LLP
1660 International Drive, Suite 600
McLean, Virginia 22102
Telephone: (703) 734-4334
Facsimile: (703) 734-4340
*Counsel for Wachovia Bank, N.A.*

## CERTIFICATE UNDER SCR-CIVIL 12-I(a)

I, Grady C. Frank, Jr., certify in compliance with SCR-Civil 12-I(a) that I have made diligent efforts to obtain consent from the affected parties for the relief sought in the foregoing motion, and have been unable to obtain consent from Plaintiff Powell Green.

Grady C. Frank, Jr.

## STATEMENT OF POINTS AND AUTHORITIES

Pursuant to SCR Civil 12-I(e), Wachovia Bank, N.A., sets forth the following statement of points and authorities in support of the Motion to Dismiss.

1.  D.C. Code § 28:1-102

2.  D.C. Code § 28:1-103

3.  D.C. Code § 28:4-406

4.  D.C. Code § 28-3901

5.  D.C. Code § 28-3903

6.  *Abdullah v. Roach*, 668 A.2d 801 (D.C. 1995).

7.  *American Ins. Co. v. Smith*, 472 A.2d 872 (D.C. 1984).

8.  *AmSouth Bank v. Tice*, 923 So. 2d 1060 (Ala. 2005).

9.  *Bradley v. First Nat'l Bank of Walker, N.A.*, 711 N.W.2d 121 (Minn. 2006).

10. *Caulfield v. Stark*, 893 A.2d 970 (D.C. App. 2006).

11. *Chelsea Plaza Holmes, Inc. v. Moore*, 226 Kan. 430 (1979).

12. *Dorn v. McTigue*, 157 F. Sup. 2d 37 (D.D.C. 2001).

13. *Gina Chin & Assoc. v. First Union Bank*, 256 Va. 59 (1998).

14.   *Herbin v. Hoeffel*, 727 A.2d 883 (D.C. 1999).

15.   *Howard v. Riggs Nat'l Bank*, 432 A.2d 701 (D.C. App. 1981).

16.   *Larijani v. Georgetown Univ.*, 791 A.2d 41 (D.C. 2002)

17.   *Mahaffy & Assoc., Inc. v. Long*, 2003 Del. Super. LEXIS 351 (Sept. 29, 2003).

18.   *McBryde v. Amoco Oil Co.*, 404 A.2d 200 (D.C. 1979).

19.   *Nelson v. Ho*, 222 Mich. App. 74 (Mich. Ct. App. 1997).

20.   *New Jersey Bank, N.A. v. Bradford Securities Operations, Inc.*, 690 F.2d 339 (3rd Cir. 1982).

21.   *Osbourne v. Capital City Mortgage Corp.*, 727 A.2d 322 (D.C. 1999).

22.   *Owens v. Tiber Island Condo. Ass'n*, 373 A.2d 890 (D.C. 1977).

23.   *Save Immaculata/Dunblane, Inc. v. Immaculata Preparatory Sch.*, 514 A.2d 1152 (1986).

24.   *Sebastian v. D&S Express, Inc.*, 61 F. Supp. 2d 386 (D. N.J. 1999).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _____ day of November, 2006, a copy of the

foregoing document was sent by first-class mail, postage prepaid, to:

Dawn C. Stewart, Esquire
Donna H. Henry, Esquire
STEWART & HENRY, PLLC
1050 Connecticut Avenue, N.W.
Tenth Floor
Washington, D.C. 20036

Amy R. Mix, Esquire
James T. Sugarman, Esquire
AARP Legal Counsel for the Elderly
601 E Street, N.W.
Washington, DC 20049

#307049

11

IN THE SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA

POWELL GREEN,                          )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )        Civil Action No. 0007523-06
                                       )
WACHOVIA BANK, N.A., *et al.*          )
                                       )
        Defendants.                    )
_____)

## ORDER

This matter is before the Court on the Defendant's Motion to Dismiss Wachovia Bank,

N.A.. The Court having read and considered the Motion to Dismiss, and any response; it is, this

_____ day of November, 2006,

**ORDERED,** that the Motion is GRANTED, and the Defendant, Wachovia Bank, N.A. is

dismissed, without prejudice.

_____
Judge, Circuit Court for
District of Columbia Superior Court

Copies to:

Grady C. Frank, Jr., Esq., D.C. Bar No. 433469
Troutman Sanders LLP
1660 International Drive, Suite 600
McLean, Virginia 22102
Tel. (703) 734-4334

Donna C. Stewart, Esquire
Donna H. Henry, Esquire
STEWART & HENRY, PLLC
1050 Connecticut Avenue, N.W. Tenth Floor
Washington, D.C. 20036

Amy R. Mix, Esquire

James T. Sugarman, Esquire
AARP Legal Counsel for the Elderly
601 E. Street, N.W.
Washington, D.C. 20049

IN THE SUPERIOR COURT
FOR THE DISTRICT OF COLUMBIA

POWELL GREEN,                          )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )        Civil Action No. 0007523-06
                                       )
WACHOVIA BANK, N.A., *et al.*          )
                                       )
        Defendants.                    )
_____)

## ORDER

This matter is before the Court on the Defendant's Motion to Dismiss Wachovia Bank,

N.A.. The Court having read and considered the Motion to Dismiss, and any response; it is, this

_____ day of November, 2006,

**ORDERED,** that the Motion is GRANTED, and the Defendant, Wachovia Bank, N.A. is

dismissed, without prejudice and awarded its attorneys' fees and costs incurred herein.


                                       _____
                                       Judge, Circuit Court for
                                       District of Columbia Superior Court

Copies to:

Grady C. Frank, Jr., Esq., D.C. Bar No. 433469
Troutman Sanders LLP
1660 International Drive, Suite 600
McLean, Virginia 22102
Tel. (703) 734-4334

Donna C. Stewart, Esquire
Donna H. Henry, Esquire
STEWART & HENRY, PLLC
1050 Connecticut Avenue, N.W. Tenth Floor
Washington, D.C. 20036

Amy R. Mix, Esquire
James T. Sugarman, Esquire
AARP Legal Counsel for the Elderly
601 E. Street, N.W.
Washington, D.C. 20049

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

POWELL GREEN,                          )
3005 Bladensburg Road, N.E., Apt. 322  )
Washington, D.C. 20018                 )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )
                                       )       CASE NUMBER  1:06CV01929
WACHOVIA BANK, N.A.,                   )
Fort Lincoln Branch                    )       JUDGE: Emmet G. Sullivan
2119 Bladensburg Road, N.E.            )
Washington, D.C. 20018                 )       DECK TYPE: General Civil
                                       )                        13
and                                    )       DATE STAMP: 11/■/2006
                                       )
BETTY GREEN,                           )
3298 Fort Lincoln Drive, N.E. #908     )
Washington, D.C. 20018                 )
                                       )
        Defendants.                    )
_____)

## NOTICE OF REMOVAL

Defendant Wachovia Bank, N.A. ("Defendant" or the "Bank"), by counsel, pursuant to

the provisions of 28 U.S.C. § 1331, 28 U.S.C. § 1441 and 28 U.S.C. § 1446, hereby gives notice

of the removal of the above-styled proceeding from the Superior Court for the District of

Columbia. As grounds for removal, the Bank states as follows:

   1.     This proceeding was initiated in the Superior Court for the District of Columbia

on October 6, 2006, by filing a Complaint by the Plaintiff, Powell Green("Plaintiff"), against the

Bank.

2.    In his Complaint, Plaintiff seeks damages and punitive damages against the Bank and alleges breach of contract, negligence, negligence *per se*, violations of the Uniform Commercial Code and the D.C. Consumer Protection Act.

3.    The controversy between the Plaintiff and the Bank involves a federal question over which this Court has original jurisdiction pursuant to provisions of 28 U.S.C. § 1331, which is removable to this Court pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1446.  Specifically, the matter in controversy arises out of a purported claim under the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.*

4.    This Notice of Removal is timely filed within thirty days of service of the Complaint on the Bank.

5.    Attached hereto are copies of all pleadings filed in the state suit, consisting of a copy of the Initial Order, Summons, Complaint, Defendant Wachovia Bank, N.A.'s Answer and Motion to Dismiss, and Defendant Wachovia Bank, N.A.'s Memorandum in Support of Motion to Dismiss.

6.    Written notice of the filing of this Notice of Removal will be given to all parties to this suit, and a copy of the Notice of Removal is being filed contemporaneously with the Clerk of the aforesaid state court, which shall effect the removal, and the state court shall proceed no further unless and until the case is remanded, as provided by law.

WHEREFORE, Wachovia Bank, N.A., hereby removes the above-styled action now

2

pending in the Superior Court for the District of Columbia.

WACHOVIA BANK, N.A.

By: _____

Grady C. Frank, Jr., D.C. Bar No. 433469
TROUTMAN SANDERS LLP
1660 International Drive, Suite 600
McLean, Virginia 22102
Telephone: (703) 734-4334
Facsimile: (703) 734-4340
*Counsel for Wachovia Bank, N.A.*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13 day of November, 2006, a true and accurate copy of

the foregoing Notice of Removal was served by first-class mail, postage prepaid, to:

Dawn C. Stewart, Esquire
Donna H. Henry, Esquire
STEWART & HENRY, PLLC
1050 Connecticut Avenue, N.W.
Tenth Floor
Washington, DC 20036

Amy R. Mix, Esquire
James T. Sugarman, Esquire
AARP Legal Counsel for the Elderly
601 E Street, N.W.
Washington, DC 20049

306430